IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

VAUGHN DYER, *individually and on behalf of* )
*others similarly situated*,                              )
                                                                    )
                              Plaintiff,                       )
                                                                    )           No. 9:20-cv-2309-DCN
                  vs.                                          )
                                                                    )           **ORDER**
AIR METHODS CORPORATION and        )
ROCKY MOUNTAIN HOLDINGS, LLC,   )
                                                                    )
                              Defendants.                  )
_____)

The following matter is before the court on defendants Air Methods Corporation

("Air Methods") and Rocky Mountain Holdings, LLC's ("Rocky Mountain Holdings")

(collectively, "defendants") motion to change venue, stay, or dismiss, ECF No. 19.  For

the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

Air Methods provides emergent air ambulance services to patients across the

United States.  Rocky Mountain Holdings is a limited liability company that, according to

the complaint, owns and operates Air Methods.  On November 17, 2018, plaintiff

Vaughn Dyer's ("Dyer") wife and minor child were involved in an accident with an EMS

vehicle in Beaufort County, South Carolina.  An Air Methods helicopter airlifted Dyer's

wife and child from the scene of the accident to a hospital in Savannah, Georgia.  For the

40-mile transport, Air Methods billed Dyer $53,224.96.  Dyer alleges that to collect its

fee, Air Methods engages in a practice called "balance billing," under which it collects a

portion of the charged fee from patients' insurance companies and seeks payment of the

outstanding balances by hiring or threatening to hire debt collectors and filing breach-of-

contract lawsuits against delinquent patients in state courts.  It is unclear whether Air Methods has sought payment from Dyer through such means.  According to Dyer, Air Methods charges patients, on average, around four times the fair market value of its services.

On June 18, 2020, Dyer filed this declaratory judgment action on behalf of himself and others who have similarly been billed for Air Methods' emergent services in South Carolina.  ECF No. 1, Compl.  Dyer seeks declaratory and injunctive relief and specifically requests that the court make the following declarations:

> [1.] Defendants and Plaintiff, and the Class did not enter into any contract, either express or implied-in-fact, for Plaintiff and the Class to pay the amounts charged by the Defendants for the transportation services it provided;
> [2.] Defendants have engaged in collection efforts against Plaintiff and the Class for amounts that the Plaintiff and the Class did not contractually agree to pay;
> [3.] Defendants have engaged in collection efforts against Plaintiff and the Class for amounts concerning which there was no mutual assent manifest by the Plaintiff and the Class prior to the rendering of the services charged for;
> [4.] The Airline Deregulation Act pre-empts the imposition of any state common law contract principles that impose terms upon Plaintiff which those parties did not express assent prior to the air medical transportation services provided to them;
> [5.] [T]he emergency medical circumstances of Defendants medical air transportation were such that patients transported can be presumed not entered into any contract for transportation, and in particular no agreement to pay whatever Defendants charged;
> [6.] [S]ince the Airline Deregulation Act pre-empts application of state law imposing or implying any agreement to pay Defendants charged amounts [sic];
> [7.] Plaintiff'[s] third party payors' determinations of the reasonable value of the Defendants' services provided is prima facie evidence of reasonableness; and
> [8.] Defendants['] collection of any sums greater than the amount determined as reasonable by objective, and typically applied formula, was unlawful, unjustly enriched Defendants, and should be disgorged.

Compl. ¶ 58.

As further relief, the complaint seeks

a prospective order from the Court requiring Defendants to: (1) cease all balance billing and collection efforts with respect to outstanding bills for air medical transportation service until this Court makes a determination of the methodology for determining their reasonable value; and (2) account for all sums collected for air medical transportation services provided to Plaintiff.

Id. ¶ 59.

On September 14, 2020, defendants filed a motion to change venue, dismiss, or stay proceedings.  ECF No. 19.  On October 12, 2020, Dyer filed a response, ECF No. 22, to which defendants replied on October 26, 2020, ECF No. 26.  The court held a hearing on the motion on December 10, 2020.  As such, the motion is ripe for the court's review.

## II.  DISCUSSION

In their motion, defendants make four alternative requests.  First, defendants ask the court to transfer this action to the District of Colorado pursuant to 28 U.S.C. § 1404(a).  Alternatively, defendants ask the court to transfer, dismiss, or stay this action pursuant to the first-to-file doctrine.  As a third option, defendants request that the court decline asserting jurisdiction over Dyer's claim under Fed. R. Civ. P. 12(b)(1).  And finally, defendants ask the court to dismiss Dyer's claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  The court addresses each alternative request in turn.

### A.  Motion to Transfer under § 1404(a)

Defendants first request that the court transfer this action to the District of Colorado pursuant to 28 U.S.C. § 1404(a), arguing that the relevant factors weigh in favor of transfer because this action is duplicative of a consolidated class action already pending in the District of Colorado and because Dyer is forum shopping.

The court first addresses defendants' contention that the instant action is duplicative of those pending in the District of Colorado. Defendants specifically point to Scarlett v. Air Methods Corp., No. 1:16-cv-02723 (D. Colo. 2016), which is a consolidation of several individually filed class actions against Air Methods.[1] Defendants also correctly point out that the instant class action is the twelfth that Dyer's counsel has filed against Air Methods.[2] The court fails to see, however, how the instant action is duplicative of any other now pending, given that this action (1) is brought by a unique plaintiff, (2) on behalf of a unique class, (3) based on a factually unique injury, and (4) invokes South Carolina state law.

As this court has previously stated, "duplicative actions a[re] those where 'the parties, issues, and available relief do not significantly differ between the two cases.'" MVP Grp. Int'l, Inc. v. Smith Mountain Indus., Inc., 2012 WL 425010, at *1 (D.S.C. Feb. 9, 2012) (citing Cottle v. Bell, 2000 WL 1144623, at *1 (4th Cir. 2000) (unpublished table opinion)); see also Nexsen Pruet, LLC v. Westport Ins. Corp., 2010 WL 3169378, at *2 (D.S.C. Aug.5, 2010) ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."). Section 1404(a) is a proper vehicle for the transfer of a duplicative case, a decision which the law commits to

---

[1] Scarlett includes similar class actions from around the country that the parties initially agreed to consolidate in the District of Colorado. After the pleading stage of those actions, during which the court dismissed some of the plaintiffs' claims, the plaintiffs narrowed the represented classes from nationwide classes to statewide classes. Thereafter, class actions filed against defendants were not consolidated with Scarlett. The court need not delve deeper into the convoluted procedural posture of Scarlett to explain why the cases contained therein are not duplicative of the instant action.

[2] Defendants note that Dyer's counsel represented plaintiffs in several of the predecessor cases that have been consolidated with Scarlett, as well as in cases in the Middle District of Georgia, the District of Vermont, and the District of New Mexico.

4

the discretion of the district court.  <u>MVP Grp. Int'l</u>, 2012 WL 425010, at *1 (citing <u>Colo. River Water Conservation Distrib. v. United States</u>, 424 U.S. 800, 817 (1976)).

This action is not duplicative of any of the actions consolidated in <u>Scarlett</u> for several reasons.  Most glaringly, the actions are brought by discrete plaintiffs and on behalf of discrete classes.  Dyer brings the instant class action on behalf of all persons billed by defendants "for air medical transport that [d]efendants carried out from a location in South Carolina."  Compl. ¶ 38.  The class actions in <u>Scarlett</u>, on the other hand, have been brought on behalf of Air Methods' patients who were billed in other states.  Defendants argue that, "at least until recently," Dyer would be included in some of the putative classes in <u>Scarlett</u> because the class actions consolidated with <u>Scarlett</u> initially included nationwide classes.  ECF No. 19-1 at 12.  But the court fails to see how the past posture of <u>Scarlett</u> is relevant to determining whether those actions are duplicative of the instant action.  Under <u>Scarlett</u>'s current procedural posture, Dyer is not "covered by any of [its] putative class actions."  ECF No. 22 at 5.  Dyer explains that while the individual <u>Scarlett</u> actions were initially filed on behalf of nationwide classes, the plaintiffs in those actions have since narrowed the classes to statewide classes because the remaining claims are based on the state law of the state in which the respective harms occurred.  As such, Dyer is not a putative member to any of the class actions consolidated in <u>Scarlett</u>; he is a South Carolina plaintiff who has filed suit on behalf of others who have allegedly experienced harm in South Carolina.  Thus, this lawsuit is not duplicative of any of those in <u>Scarlett</u>.

Moreover, Dyer's claim and the claims in <u>Scarlett</u> require an analysis of distinct state law and individualized facts.  As the court discusses in greater detail below, the only

5

question left for the district court to resolve in <u>Scarlett</u> is whether the patients in those

actions entered into contracts with Air Methods for air ambulance services.  Dyer's

declaratory judgment claim asks the court to answer the same question with respect to

Dyer and the putative class members.  These identical questions, however, invoke distinct

law.  In <u>Scarlett</u>, the Colorado district court will determine whether contracts exist based

on the application of Colorado law, and, here, the court will answer the same question by

employing South Carolina law.  Indeed, as the court discusses below, the question of

whether contracts exist in these cases involves much more than a rudimentary survey of

basic contract-law principles.  The issue turns on the court's application of state-specific

doctrines of contract law—like the differences between an implied-in-fact contract and an

implied-in-law contract—that differ from state to state in ways that could prove material.

Moreover, such a determination will require the court to consider individualized facts,

like whether either party manifested assent to certain terms.  As such, this action is not

duplicative of <u>Scarlett</u>, and, for the same reasons, it is not duplicative of any other class

action to which defendants provide citation.  As this court has made clear, duplicative

cases must be "substantially similar" in their parties, factual issues, applicable law, and

available relief.  <u>MVP Grp. Int'l</u>, 2012 WL 425010, at *1.  Some overlap in the

proceeding categories do not duplicative actions make; the law requires "substantial

similarity," which does not exist here.

   Finding that this action is not duplicative of any other, the court employs the

traditional factors under § 1404(a).  "For the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district . . .

where it might have been brought or to any district . . . to which all parties have

consented." 28 U.S.C. § 1404(a). The burden is on the moving party to show by a preponderance of the evidence "that transfer to another forum is proper." State Farm Fire & Cas. Co. v. Blanton, 2014 WL 7146980, at *2 (D.S.C. Dec. 15, 2014) (citations omitted). The decision to transfer a case to another venue is "committed to the discretion of the district court[,]" In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984) (citations omitted), requiring the court to undertake "an individualized, case-by-case consideration of convenience and fairness" and "to weigh in the balance a number of case-specific factors," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted). The factors "commonly considered" are:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Atkins v. Mortara Instrument, Inc., 2017 WL 10754250, at *2 (D.S.C. Sept. 29, 2017).

Here, the factors weigh decidedly against transfer. Most fundamentally, a transfer to the District of Colorado would egregiously inconvenience Dyer. Dyer is a South Carolina citizen who has brought suit in South Carolina for an injury he alleges occurred in South Carolina based on Air Methods' acts in South Carolina. It would be unjust to force Dyer to litigate this case in a forum over 1,500 miles from his home, where he alleges he experienced injury and where he has brought suit. A transfer of this action to Colorado would present a significant and unnecessary burden to Dyer's claim for relief, unrelated to its merits. Defendants ask the court to transfer this action across the country merely because plaintiffs in other states have alleged similar harms against the same defendant, a nationwide corporation who bills patients for its services across the country.

The fact that other plaintiffs elsewhere allege similar harms against defendants and are represented—in some cases—by the same counsel does not justify imposing such a significant bar to relief.

Defendants posit that the court should not give credence to Dyer's choice of forum in this case because his attorneys are forum shopping. The court disagrees. Defendants obsess about the actions of some of Dyer's attorneys, explaining that Dyer's attorneys initially filed several lawsuits against defendants on behalf of nationwide classes and theorizing that Dyer's attorneys have strategically filed suit on behalf of statewide classes in certain states to avoid unfavorable rulings. Even if defendants are correct that Dyer's attorneys are strategically filing lawsuits around the country, their forum shopping argument fails for two related reasons.

First, proper forum shopping analysis focuses on the plaintiff, not the plaintiff's attorneys. Here, Dyer is a South Carolina plaintiff, who was allegedly harmed in South Carolina and seeks vindication of his rights under South Carolina law. Thus, it is clear that Dyer himself is not forum shopping. The Fourth Circuit has noted that forum shopping should not be indulged "where [] the shopper is offered an equally convenient forum." Gen. Tire & Rubber Co. v. Watkins, 373 F.2d 361, 369 (4th Cir. 1967). While the defendants fixate on the fact that Colorado would be an equally convent forum for Dyer's counsel, they fail to grasp that the question of convince focuses on the plaintiff, not his attorneys. And certainly, defendants cannot claim that Colorado and South Carolina are equally convenient forums for Dyer, a citizen of South Carolina. Secondly, and critically, the classes in Scarlett are now statewide classes, meaning that Dyer is not a member of any putative class in any action pending in the District of Colorado.

Therefore, Dyer's only means to obtain relief is to file a separate lawsuit, which he has done in his home state. It certainly does not matter to Dyer that a few cases across the country were initially filed on behalf of nationwide classes; under the current procedural posture of those actions, Dyer is not included in the putative classes, meaning he cannot receive relief from those cases. As such, Dyer's decision to file suit in South Carolina seems to the court a logical and efficient means of obtaining relief, rather than part of a beneath-the-surface strategy to avoid unfavorable law.

On balance, the remaining factors also weigh decidedly against transfer. To be sure, defendants are correct that Colorado would be a more convenient forum for them, as defendants' corporate representatives reside there. At the same time, South Carolina remains a much more convenient forum for Dyer, and, according to basic principles of civil procedure, a tie goes to the plaintiff's choice of forum. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981) (noting that a plaintiff's choice of forum should "rarely be disturbed" absent extraordinary circumstances). Further, the interest in having a local controversy decided locally, the availability of fact witnesses and evidence, and the interests of justice all weight against transfer. Therefore, the court rejects the defendants' request to transfer venue pursuant to § 1404(a).

### B. Motion to Dismiss, Transfer, or Stay Pursuant to the First-to-File Doctrine

As a second alternative, defendants ask the court to dismiss, transfer, or stay this action pursuant to the first-to-file doctrine. "When actions are duplicative, [t]he Fourth Circuit recognizes the 'first-filed' rule, which gives priority to the first suit filed absent a balance of convenience favoring the second filed." Seithel v. Feldman & Pinto, P.A., 2011 WL 3924179, at *8 (D.S.C. Sept. 7, 2011) (citing Nexsen Pruet, 2010 WL 3169378,

at *2 (D.S.C. Aug.5, 2010)) (internal quotation marks omitted).  Because the court

already determined that this action is not duplicative of Scarlett or any other case to

which defendants cite, the first-to-file doctrine is inapplicable.  As such, the court rejects

defendants' first-to-file argument.

### C.  Motion to Dismiss under 12(b)(1)

Third, defendants ask that the court "decline to exercise jurisdiction" over this

action pursuant to the Declaratory Judgment Act and "dismiss the complaint."  ECF No.

19-1 at 13.  The court rejects defendants' argument and resolves to exercise jurisdiction

over the action.

> The Declaratory Judgment Act states that
>
> In a case of actual controversy within its jurisdiction . . . any court of the
> United States, upon the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.  Acknowledging Article III's circumscription of federal jurisdiction to

"cases and controversies," the Declaratory Judgment Act limits its application to "case[s]

of actual controversy," meaning that it "is operative only in respect to controversies

which are such in the constitutional sense." Aetna Life Ins. Co. of Hartford, Conn. v.

Haworth, 300 U.S. 227, 240 (1937); see also Volvo Const. Equip. N. Am., Inc. v. CLM

Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004) ("A case meets the actual controversy

requirement only if it presents a controversy that qualifies as an actual controversy under

Article III of the Constitution.").  A declaratory judgment action presents a justiciable

controversy where "the facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

Even where a declaratory judgment action presents a justiciable controversy, the court's exercise of jurisdiction over the action is discretionary. See Wilton v. Seven Falls Co., 515 U.S. 277, 289–90 (1995); see also Trustgard Ins. Co. v. Collins, 942 F.3d 195, 201 (4th Cir. 2019) ("[The Declaratory Judgment] Act gives federal courts discretion to decide whether to declare the rights of litigants."). Such discretion, however, "is not unbounded," and a district court may refuse to entertain a declaratory judgment action only "for good reason." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)) (internal quotation marks omitted). The Fourth Circuit calls for "liberal[ ] contru[ction]" of the Declaratory Judgment Act to fulfil "the purpose intended, i.e., to afford a speedy and inexpensive method of adjudicating legal disputes[ ], and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." Id. A court should generally exercise jurisdiction over a declaratory judgment claim "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Quarles, 92 F.2d at 325.

The Sixth Circuit recently addressed defendants' exact argument in a different class action pending against defendants based on Air Methods' billing practices: Byler v. Air Methods Corp., 823 F. App'x 356 (6th Cir. 2020). The facts in Byler are nearly identical to the facts here. The plaintiffs brought a class action against defendants after

receiving bills for Air Methods' air ambulance services.  The plaintiffs there brought a

declaratory judgment claim, proceeding on the same theory on which plaintiffs proceed

in this action.  At the risk of oversimplification,[3] the plaintiffs sought declarations that (1)

no express contracts existed between Air Methods and its patients for air ambulance

services and (2) the court could not impose an implied contract between the parties based

on the preemption provision of the Airline Deregulation Act ("ADA").  There, like here,

the defendants urged the district court to decline jurisdiction pursuant to the discretion

afforded to courts by the Declaratory Judgment Act.  The district court obliged, reasoning

that the underlying controversy—whether the plaintiffs were obligated to pay their

bills—was too indefinite to support a federal declaratory judgment action because there

was no indication that Air Methods actively pursued collection efforts.  Id. at 365.

    The Sixth Circuit overturned the district court's decision, firmly holding that the

district court abused its discretion in declining to assert jurisdiction:

> The first two Grand Trunk factors[4]—whether a declaratory judgment would
> settle the controversy between the parties and clarify the legal relations in
> issue—favor the exercise of jurisdiction.  Plaintiffs asked the court for a

---

[3] The court discusses the complexities of the declaratory judgment claims in Byler and Scarlett, as well as the one in this case, below.  For the purposes of this jurisdictional discussion, those complexities, and the ways in which they differ, are immaterial. Because the declaratory judgment claim in Byler would resolve underlying controversies strikingly similar to the underlying controversies here, the court finds the Sixth Circuit's analysis instructive.

[4] The court in Byler employed the Sixth Circuit's test for exercising jurisdiction over declaratory judgment actions.  The first two factors of the Sixth Circuit's Grand Trunk test, recognized as the "principle criteria" for the determination, mirror exactly the comparable test in this Circuit.  Compare Grand Trunk W. R. Co. v. Consol. Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984) ("The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding") with Quarles, 92 F.2d at 325 (same).  As such, the court finds the Sixth Circuit's analysis in Byler particularly persuasive.

> declaration that (1) there is no enforceable contract and that (2) without a contract, any attempt to collect excessive fees from plaintiffs is preempted by the ADA. Were the district court to issue a declaration to this effect, Air Methods would be foreclosed from recovering excessive amounts under either a contract or quasi-contract theory in state court: the contract claim would fail for lack of an enforceable contract, while the quasi-contract contract claim would fail as preempted. Thus, the declaratory judgment would settle the controversy and clarify the legal relations between plaintiffs and Air Methods.

Id. at 365–66. Moreover, the Sixth Circuit persuasively explained that the court's exercise of jurisdiction over the instant suit would comport with the Declaratory Judgment Act's intended purpose:

> Plaintiffs in this case face the looming uncertainty of not knowing whether they will be held liable for large sums of money. This is on top of the negative consequences that potentially flow from Air Methods' out-of-court collection efforts, including the accumulation of interest on the charged amounts. It is in these types of situations, where there is a threat of ongoing harm, that declaratory relief is most appropriate.

Id. at 366 (internal citation omitted).

The court agrees with the analysis and holding of the Sixth Circuit. A clear controversy between the parties underlies this action, given that Air Methods seeks payment that Dyer argues he and the putative class members are not legally obligated to pay. Even if Air Methods does not engage in active collection efforts, the existence of an unpaid debt carries with it collateral consequences beyond the mere obligation to pay. For example, a debtor's credit score, and therefore his ability to obtain a loan, could suffer. As such, like in Byler, Dyer and the putative class members face clear uncertainty about their obligation to pay steep bills, from which they experience some injury. Therefore, like in Byler, the court's resolution of the instant declaratory judgment claim would certainly "serve a useful purpose in clarifying and settling the legal relations in issue" and "terminate and afford relief from the uncertainty, insecurity, and controversy

giving rise to the proceeding." Quarles, 92 F.2d at 325. As such, the court rejects

defendants' argument and exercises jurisdiction over Dyer's claim.

### D.  Motion to Dismiss under 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss for "failure to state a

claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to

dismiss, the court must accept the plaintiff's factual allegations as true and draw all

reasonable inferences in the plaintiff's favor. E.I. du Pont de Nemours & Co. v. Kolon

Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is

limited to determining whether the complaint states a "plausible claim for relief." Id. at

679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim

showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a

cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly,

550 U.S. at 570).

Defendants' motion asserts various theories for the dismissal of Dyer's

declaratory judgment claim, which seeks several declarations from the court. See Compl.

¶ 58. For the purposes of the following analysis, the court groups Dyer's proposed

declarations into two categories: (1) declarations that Air Methods and plaintiffs did not

enter into express or implied-in-fact contracts for air ambulance services, and (2)

declarations that the ADA would preempt a court from imposing implied-in-law contracts or other similar quasi-contractual obligations onto plaintiffs and defendants.[5]

### 1. ADA Preemption

Before analyzing the cognizability of Dyer's proposed declarations, the court provides an overview of the doctrine of preemption under the ADA, which pervades defendants' arguments for dismissal.

In 1978, Congress enacted the ADA, deregulating the field of air transportation in an effort "to promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.'" Nw., Inc. v. Ginsberg, 572 U.S. 273, 280 (2014) (quoting 49 U.S.C. §§ 40101(a)(6), (12)(A)). The ADA includes an explicitly titled "Preemption" provision, which provides, "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

The Supreme Court has recognized Congress's "express[ion] of a broad pre-emptive purpose," intended "[t]o ensure that the States would not undo federal deregulation with regulation of their own." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992). Accordingly, courts have construed ADA preemption liberally, finding that it prohibits any state law which "ha[s] a connection with, or reference to, airline rates, routes, or services." Id. Further, ADA preemption applies to the "rates,

---

[5] The first category of declarations represents four proposed declarations listed in the complaint as declarations 'a'–'c' and 'e'. Compl. ¶ 58. The second category of declarations represents plaintiffs' fourth and sixth proposed declarations listed in the complaint as declarations 'd' and 'f'. Id. The court addresses the plaintiffs' final two proposed declarations, listed as declarations 'g' and 'h', below.

routes, [and] services" of air ambulances, just as it does to airlines.  Air Evac EMS, Inc. v. Cheatham, 910 F.3d 751, 766 (4th Cir. 2018) (finding that "the ADA's preemption clause applies to the air ambulance industry").

Based on this broad construction, the Supreme Court has also determined that ADA preemption applies to state-court-created common law just as it applies to state statutes and regulations.  Ginsberg, 572 U.S. at 281.  Accordingly, a court cannot "regulate" private agreements regarding the rates, routes, or services of an air carrier through the application of state common law.  Id.  Court application of state common law amounts to prohibited state regulation where the common law is rooted in policy and where the application of that policy-based law would "enlarge the contractual obligations that the parties voluntarily adopt."  Id. at 276.  The Supreme Court reasoned the such application of state law is regulatory in nature because it "cannot be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract."  Id. at 273.

However, the ADA does not preclude all application of state common law in the realm of air transportation.  For example, a court may enforce a private air transportation contract through the application of ordinary state contract law.  See Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 228–29 (1995) ("[T]erms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law[.]'").  Taken together, Ginsberg and Wolens authorize a court to apply state law in the area of air transportation "to effectuate the intentions of parties or to protect their reasonable expectations," but prohibit a court from imposing state-law principles for the purpose of protecting "community standards of decency,

16

fairness, or reasonableness." Ginsberg, 572 U.S. at 286. Put another way, a court may call balls and strikes relating to air transportation agreements, but the ADA prohibits it from grafting policy-based state common law onto those agreements in a way that enlarges or creates obligations to which the parties did not assent. With these principles in mind, the court turns to the substance of Dyer's claims.

### 2. First Category of Declarations – Existence of Contracts

Defendants contend that the ADA preempts the first category of Dyer's requested declarations, i.e., that the parties did not enter into express or implied-in-fact contracts. Scarlett, the consolidated class action against defendants pending in the District of Colorado, eventually worked its way up to the Tenth Circuit. In that decision, the Tenth Circuit confronted the exact issue the court now considers. Scarlett v. Air Methods Corp., 922 F.3d 1053 (10th Cir. 2019). In Scarlett,[6] the plaintiffs requested a declaration from the court that Air Methods and its patients never entered into enforceable contracts, meaning that the plaintiffs had no contractual obligation to pay Air Methods' bills. In response, Air Methods argued that the plaintiffs' declaratory judgment claim was preempted by the ADA. The Tenth Circuit disagreed:

> [T]he district court can enforce contractual "terms and conditions . . . offered by Defendants and . . . accepted" by Plaintiffs without running afoul of the ADA's pre-emption provision. Ginsberg, 572 U.S. at 281 (quoting

---

[6] As the court referenced above, Scarlett is a consolidation of class-action suits against Air Methods. One of the pre-consolidation cases was Cowen v. Air Methods Corp., No. 1:17-cv-0791 (D. Colo. 2017). Despite consolidation, the respective plaintiffs in Scarlett and Cowen asserted slightly different claims. As a result, the Tenth Circuit split its analysis between the "Scarlett Plaintiffs" and "Cowen Plaintiffs." For the purposes of this order, the court collectively refers to all the plaintiffs represented in Scarlett because the differences between the claims of the Scarlett Plaintiffs and the claims of the Cowen Plaintiffs are not material to the court's analysis here. Both sets of plaintiffs asserted declaratory judgment claims seeking declarations that no contract existed between Air Methods and its patients, which is the claim the court considers here.

Wolens, 513 U.S. at 228–29).  To enforce a contract, a court must first confirm that a contract exists.  Defendants have offered no reason why a court that can enforce a contract would be prohibited from "declar[ing] the rights and other legal relations" arising from a contractual relationship, or lack thereof.  28 U.S.C. § 2201.  Though "the Declaratory Judgment Act does not extend the jurisdiction of federal courts, it does enlarge the range of remedies available."  Prier v. Steed, 456 F.3d 1209, 1212 (10th Cir. 2006).

Therefore, the ADA does not prohibit a court from declaring that, because the parties never agreed on a price, no express or implied-in-fact contracts were formed.  To enter such a declaration, a court would only need to examine whether there was the necessary mutual assent to form a contract.

Id. at 1067–68 (10th Cir. 2019) (internal alterations omitted).  As such, the Tenth Circuit remanded the case to the district court with instruction to resolve the declaratory judgment claim.[7]

The court finds the Tenth Circuit's holding and rationale persuasive.  The ADA does not prohibit all application of state common law in the context of air transportation.  Ginsberg only prohibits courts from applying common law where the law is rooted in policy and its application would "enlarge the contractual obligations that the parties voluntarily adopt."  572 U.S. at 276.  But Ginsberg gives the court no reason to believe that the ADA also preempts a court from applying basic state law principles to determine whether the parties voluntarily adopted any obligations at all.  And Wolens confirms that courts are free to apply state law to uphold private contractual relationships.  513 U.S. at 228.  It clearly follows that a court would not run afoul of the ADA's preemption

_____

[7] As a technical matter, the Tenth Circuit's holding on the declaratory judgment claim applied only to the "Cowen Plaintiffs" and not the "Scarlett Plaintiffs."  However, the court dismissed the Scarlett Plaintiffs' declaratory judgment claim on procedural, rather than substantive, grounds.  See Scarlett, 922 F.3d at 1067 ("The Scarlett Plaintiffs do not discuss their declaratory judgment claim in their briefing on appeal and have therefore abandoned the issue.").  The Tenth Circuit's substantive analysis of the Cowen Plaintiffs' declaratory judgment claim applies to Dyer with equal force.

provision by applying state law to determine whether a private contractual relationship

exists at all.  Like the court in Wolens, the court here will apply state law to analyze the

legal relationship between the parties, not to "regulate" that relationship by grafting onto

it state-law protections.  In other words, Dyer's proposed declaration merely requires the

court make a ball-or-strike determination.  Therefore, like the Tenth Circuit, the court

finds that the ADA does not preempt Dyer's proposed declaration that Air Methods and

its patients did not enter into enforceable contracts.

### 3.  Second Category of Declarations – Enforcement of Implied Contracts

The second category of Dyer's proposed declarations asks the court to declare that

the doctrine of ADA preemption prevents courts from enforcing implied-in-law contracts

between Air Methods and its patients.  Defendants argue that these requests must fail

because the ADA does not preempt court enforcement of implied-in-law contracts.

According to defendants, "while the ADA preempts any state law that regulates Air

Methods'[s] rates, it does not preempt state laws that require payment for Air

Methods'[s] air ambulance services."  ECF No. 19-1 at 24.  Unfortunately for defendants,

the Supreme Court has rejected this notion, foreclosing defendants' attempt to "have it

both ways."  Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 265 (2013).

The Tenth Circuit also addressed this issue in Scarlett, albeit in mirror-image

form.  922 F.3d at 1065.  In addition to their declaratory judgment claim, the plaintiffs in

Scarlett brought an alternative claim for breach of implied contract.  The plaintiffs'

theory under that claim was that Air Methods and its patients entered into implied-in-law

contracts for air ambulance services and that Air Methods breached that implied contract

by charging more than a reasonable rate.  The Tenth Circuit found that the ADA's

preemption provision prohibited courts from imposing and enforcing implied-in-law contracts concerning air transportation. The Tenth Circuit explained that implied-in-law contracts are imposed by courts onto parties in the absence of voluntary, mutual assent. Therefore, "[e]nforcing an implied-in-law contract 'cannot be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract,' [ ] because an implied-in-law contract is an 'obligation created by law for reasons of justice,'" Scarlett, 922 F.3d at 1065 (quoting Ginsberg, 572 U.S. at 288 and Restatement (Second) of Contracts § 4 cmt. b.). In other words, when a court imposes an implied-in-law contract, it applies state common law in a way that "enlarge[s] the contractual obligations that the parties voluntarily adopt" because the parties voluntarily adopted no obligations at all. Ginsberg, 572 U.S. at 276. As such, the Tenth Circuit held that the Scarlett plaintiffs' breach-of-implied-contract claim failed. 922 F.3d at 1065.

The Sixth Circuit's decision in Byler, the other class action against defendants that the court discussed above, also provides strong support for the court's holding. 823 F. App'x at 364. There, the Sixth Circuit, in dicta, noted that "courts have been unanimous in the view that implied-in-law contract claims . . . are preempted by the ADA because they are predicated on the lack of an agreement and thus involve a state-imposed obligation." Id. at 364 (6th Cir. 2020) (collecting cases). For the same reasons, the court finds that the second category of Dyer's requested declarations presents a cognizable claim. A court's imposition of a legally fictitious contract is nothing more than the application of policy-based state law which "enlarge[s] the contractual obligations that the parties voluntarily adopt." Ginsberg, 572 U.S. at 276. As such, any court enforcement of Air Methods' bills would run afoul of the ADA.

20

Defendants argue that such an interpretation of the ADA's preemption provision would "turn[ ] the ADA completely on its head" because it cuts against the ADA's deregulatory spirit. ECF No. 19-1 at 22. The court disagrees for two reasons. For one, a court's imposition of an implied-in-law contract is a regulatory act because it binds parties to terms to which they did not assent in the name of the public good. Implied-in-law contracts are vehicles by which courts intervene on free-market outcomes to impose public policy. Put simply, court enforcement of an implied-in-law contract would regulate, not deregulate, the free market. The purpose of the ADA is to deregulate, not to favor air carriers, and the fact that the ADA's deregulatory effect does not favor an air carrier in this instance does not make it any less deregulatory. As such, the court's interpretation of the ADA's preemption provision as forbidding such court intervention is in lockstep with the deregulatory spirit of the ADA.

And second, the Supreme Court has made clear that federal preemption provisions cut both ways. In Dan's City Used Cars, Inc. v. Pelkey, the Supreme Court considered whether the Federal Aviation Administration Authorization Act ("FAAAA") preempted a plaintiff's state-law claims against a towing company. 569 U.S. at 259. Although Dan's City construed the preemption provision of the FAAAA, the Supreme Court noted that the FAAAA's preemption provision generally "tracks the ADA's air-carrier preemption provision." Id. at 261. As such, the court finds the analysis in Dan's City particularly instructive.

In Dan's City, a towing company towed the plaintiff's car and promptly sold it to pay for the towing and storage services rendered. Id. at 258. State regulations permitted the towing company to sell the car, and the towing company "relied on those laws" to do

so.  Id. at 255.  The plaintiff sued the towing company, bringing claims under state consumer protection laws.  Id.  In response, the towing company argued that the plaintiff's claims were preempted by the FAAAA because "selling [the plaintiff's] car was the means by which [the company] obtained payment for the tow," meaning that the court could not "regulate" such payment.  Id. at 265.  In that way, the towing company sought to utilize state law as a sword to enforce a benefit—its ability to sell the plaintiff's car—and simultaneously sought to shield itself from state law by using FAAA preemption as a defense to the plaintiff's state-law claims.  The Supreme Court disapproved, finding that the towing company "cannot have it both ways.  It cannot rely on [the state]'s regulatory framework as authorization for the sale of [the plaintiff's] car, yet argue that [the plaintiff's] claims, invoking the same state-law regime, are preempted."  Id.

The same goes for defendants here.  In Scarlett, the defendants argued that the court could not impose implied-in-law contracts on the parties based on the doctrine of ADA preemption.  922 F.3d at 1065.  Now, here, defendants argue that they should be permitted to utilize the common-law doctrine of implied-in-law contracts to collect on the bills they have charged patients.  Just like the towing company in Dan's City, defendants seize on state law as authorization to collect sums for which they have billed yet simultaneously argue that plaintiffs' claims invoking the same state law are preempted by the ADA.  The deregulatory effect of the ADA cuts both ways, and defendants may not simultaneously reap its benefits and disclaim its repercussions.  Just as the Scarlett plaintiffs could not enforce implied-in-law contracts for their breach-of-implied contract claims, defendants may not enforce implied-in-law contracts to compel payments to

22

which plaintiffs did not agree, and the court may so declare.[8]  In sum, the court finds that

both categories of Dyer's proposed declarations state valid grounds for relief.[9]

### 4.  Sufficiency of the Complaint

Finally, defendants contend that:

Setting aside all the other legal issues with the Complaint, at the very least,
it fails to even include sufficient factual allegations to resolve the question
of whether there was a contractual arrangement between Dyer and
Defendants.   The Complaint failed to include any non-conclusory

---

[8] Moreover, the Tenth Circuit in Scarlett strongly implied that Dan's City could
prevent Air Methods from enforcing implied-in-law contracts against its patients in state
court.  Ultimately, the court found Dan's City inapplicable because (1) the plaintiffs did
not ask the court to make a declaration about the defendants' ability to collect fees in
state court actions and (2) the plaintiffs failed to properly raise the argument on appeal.
Scarlett, 922 F.3d at 1063 ("We will not base our analysis on an argument first made at
oral argument.").  Nevertheless, the court strongly implied that the doctrine would apply
to defendants' state-court efforts to enforce implied-in-law contracts.  Id. ("If Defendants
in fact rely on equitable principles in their state court lawsuits against Plaintiffs, Plaintiffs
remain free to raise Dan's City and argue that Defendants are trying to have it both
ways.").

[9] Dyer's final two proposed declarations, styled in the complaint as declarations
'g' and 'h', ask the court to declare that (1) "Plaintiff[s]' third party payors'
determinations of the reasonable value of the Defendants' services provided is prima
facie evidence of reasonableness," and (2) "Defendants collection of any sums greater
than the amount determined as reasonable by objective, and typically applied formula,
was unlawful, unjustly enriched Defendants, and should be disgorged."

These proposed declarations ask the court to declare whether certain remedies are
appropriate.  At this stage, it is only appropriate for the court to "declare the rights and [ ]
legal relations" of the parties.  28 U.S.C. § 2201(a).  It would be inappropriate at this time
for the court to consider "further necessary or proper relief" that might be available to
Dyer under § 2202 of the Declaratory Judgment Act.  Id. at § 2202.  As such, the court
construes Dyer's final two proposed declarations as prayers for further relief and declines
to consider their dismissal here.  That said, some courts have found remedies similar to
those requested here to be preempted by the ADA.  See Schneberger v. Air Evac Ems,
Inc., 749 F. App'x 670, 678 (10th Cir. 2018) ("We are persuaded by the district court's
conclusion that an Oklahoma state-law claim that requires a court to determine a
reasonable price for air-ambulance services self-evidently affects the price of those
services.  And, thus, ordinarily the ADA would preempt such claims."); see also Brown
v. United Airlines, Inc., 720 F.3d 60, 70 (1st Cir. 2013) ("The Wolens exception is very
narrow, [ ] and the plaintiffs' unjust enrichment and tortious interference claims fall
outside its confines.  [T]hose claims are alleged to arise out of state-imposed obligations,
not private terms agreed to by the parties.").

> allegations sufficient to provide the declaration he seeks, namely, whether
> there is any contractual relationship between Dyer and Defendants.

ECF No. 19-1 at 26.  Defendant seems to be arguing that Dyer has not stated a proper

claim with respect to his proposed declaration that no contract exists between Air

Methods and Dyer.

Defendants' argument is puzzling.  To state a valid claim, a plaintiff need only

plead "a short and plain statement of the claim showing that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2).  In his complaint, Dyer asks the court to declare that no

contract exists between him and Air Methods.  Accordingly, Dyer alleges that he "had no

contract with Defendants to pay their charges for the transportation of his minor child

from the accident scene to Memorial Hospital in Savannah, Georgia."  Compl. ¶ 30.  He

also asserts that Air Methods' employees "determined . . . that transport by air ambulance

was medically necessary" and "made all arrangement for [the] transportation."  Id. ¶ 29.

These allegations are sufficient to support a theory that neither Dyer, his wife, nor his

minor child entered into an agreement with Air Methods for air ambulance services.  To

be clear, Dyer's claim is that no contract ever existed.  Defendants argue that Dyer should

be required to plead with more specificity the absence of an agreement by stating that

certain events did not occur.  See ECF No. 19-1 at 26 (Dyer "does not allege . . . whether

he had conversations with anyone from Defendants before or during his child's

transportation.").  In other words, Defendants would have the court dismiss this case

because Dyer has failed to specifically plead that certain facts did not happen.  The court

declines to do so and instead finds that Dyer has sufficiently pled facts to demonstrate

that he and Air Methods did not enter into a contract.  The specific facts related to the

transport of Dyer's wife and minor child will be elicited through discovery, after which the court will have solid grounds to judge the merits of Dyer's claim.[10]

In sum, the court rejects defendants' requests to stay, transfer, or dismiss this action pursuant to § 1404(a) and the first-to-file doctrine, and resolves to exercise jurisdiction over this action. With respect to defendants' substantive arguments for dismissal, the court finds that Dyer has stated a cognizable claim by requesting declarations that are not preempted by the ADA and do not fail as a matter of law. As such, the court denies defendants' motion in full.

### III.  CONCLUSION

For the foregoing reasons the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 17, 2020**
**Charleston, South Carolina**

---

[10] Defendants also contend that this action should be dismissed because the ADA does not "create an affirmative, private cause of action." ECF No. 19-1 at 25. This argument is unconvincing. The source of Dyer's declaratory judgment claim is the Declaratory Judgment Act and the controversy that underlies this action. The Declaratory Judgment Act authorizes the court to state the rights of parties; it is of no consequence that those rights derive from an inactionable law. Thus, Dyer's declaratory judgment cause of action states a valid claim for relief.