**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| VAUGHN DYER, *individually and on behalf of others similarly situated*, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>AIR METHODS CORPORATIONS and )<br>ROCKY MOUNTAIN HOLDINGS, LLC, )<br>)<br>Defendants. )<br>_____) | No. 9:20-cv-2309-DCN<br><br>**ORDER** |

The following matter is before the court on defendants Air Methods Corporations ("Air Methods") and Rocky Mountain Holdings, LLC's (collectively, "defendants") motion to strike class allegations, ECF No. 42. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

Air Methods provides emergent air ambulance services to patients across the United States. Rocky Mountain Holdings is a limited liability company that, according to the complaint, owns and operates Air Methods. On November 17, 2018, plaintiff Vaughn Dyer's ("Dyer") wife and minor child were involved in an accident with an EMS vehicle in Beaufort County, South Carolina. An Air Methods helicopter airlifted Dyer's wife and child from the scene of the accident to a hospital in Savannah, Georgia. For the 40-mile transport, Air Methods billed Dyer $53,224.96. Dyer alleges that to collect its fee, Air Methods engages in a practice called "balance billing," under which it collects a portion of the charged fee from patients' insurance companies and seeks payment of the outstanding balances by hiring or threatening to hire debt collectors and filing breach-of-

1

contract lawsuits against delinquent patients in state courts. It is unclear whether Air Methods has sought payment from Dyer through such means. According to Dyer, Air Methods charges patients, on average, around four times the fair market value of its services.

On June 18, 2020, Dyer filed this declaratory judgment action on behalf of himself and others who have similarly been billed for Air Methods' emergency services in South Carolina. ECF No. 1, Compl. The complaint defines the proposed class as, "All persons billed by Defendants, or who paid a bill from Defendants, for air medical transport that Defendants carried out from a location in South Carolina." Id. ¶ 38. Dyer seeks declaratory and injunctive relief on behalf of himself and the proposed class, and specifically requests that the court make the following declarations:

> [1.] Defendants and Plaintiff, and the Class did not enter into any contract, either express or implied-in-fact, for Plaintiff and the Class to pay the amounts charged by the Defendants for the transportation services it provided;
> [2.] Defendants have engaged in collection efforts against Plaintiff and the Class for amounts that the Plaintiff and the Class did not contractually agree to pay;
> [3.] Defendants have engaged in collection efforts against Plaintiff and the Class for amounts concerning which there was no mutual assent manifest by the Plaintiff and the Class prior to the rendering of the services charged for;
> [4.] The Airline Deregulation Act pre-empts the imposition of any state common law contract principles that impose terms upon Plaintiff which those parties did not express assent prior to the air medical transportation services provided to them;
> [5.] [T]he emergency medical circumstances of Defendants medical air transportation were such that patients transported can be presumed not entered into any contract for transportation, and in particular no agreement to pay whatever Defendants charged;
> [6.] [S]ince the Airline Deregulation Act pre-empts application of state law imposing or implying any agreement to pay Defendants charged amounts [sic];

> [7.] Plaintiff'[s] third party payors' determinations of the reasonable value of the Defendants' services provided is prima facie evidence of reasonableness; and
>
> [8.] Defendants['] collection of any sums greater than the amount determined as reasonable by objective, and typically applied formula, was unlawful, unjustly enriched Defendants, and should be disgorged.

Id. ¶ 58. As further relief, the complaint seeks

> a prospective order from the Court requiring Defendants to: (1) cease all balance billing and collection efforts with respect to outstanding bills for air medical transportation service until this Court makes a determination of the methodology for determining their reasonable value; and (2) account for all sums collected for air medical transportation services provided to Plaintiff.

Id. ¶ 59.

On September 14, 2020, defendants filed a motion to change venue, dismiss, or stay proceedings, ECF No. 19, which the court denied on December 17, 2020, ECF No. 34. There, the court grouped Dyer's proposed declarations into two categories: (1) declarations that Air Methods and plaintiffs did not enter into express or implied-in-fact contracts for air ambulance services, and (2) declarations that the ADA would preempt a court from imposing implied-in-law contracts or other similar quasi-contractual obligations onto plaintiffs and defendants.[1] The court found that both categories present

---

[1] The court also included a third group, comprised of the declarations Dyer lists in his complaint as "g" and "h." With respect to those declarations, the court found:
> These proposed declarations ask the court to declare whether certain remedies are appropriate. At this stage, it is only appropriate for the court to "declare the rights and [ ] legal relations" of the parties. 28 U.S.C. § 2201(a). It would be inappropriate at this time for the court to consider "further necessary or proper relief" that might be available to Dyer under § 2202 of the Declaratory Judgment Act. Id. at § 2202. As such, the court construes Dyer's final two proposed declarations as prayers for further relief and declines to consider their dismissal here.

ECF No. 34 at 23 n.9.

cognizable declarations for the court's consideration and resolved to exercise its discretion to so consider them under the Declaratory Judgment Act, 28 U.S.C. § 2201.

On April 1, 2021, defendants filed a motion to strike the complaint's class allegations. ECF No. 42. On April 15, 2021, Dyer responded, ECF No. 45, and on April 22, 2021, defendants replied, ECF No. 48. The court held a hearing on the matter on May 4, 2021. As such, the motion is now ripe for review.

## II.   STANDARD

Fed. R. Civ. P. 23(d)(1)(D) provides, "In conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[.]" Courts in this circuit have found that Rule 23(d)(1)(D) authorizes a district court to dismiss or strike class allegations "where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." Waters v. Electrolux Home Prod., Inc., 2016 WL 3926431, at *4 (N.D. W. Va. July 18, 2016).[2] A motion to strike class allegations asserts that "certification is precluded as a matter of law" and "thus requires that the [c]ourt apply the standard applicable to a motion to dismiss under Rule 12(b)(6)." Bryant v. Food Lion, Inc., 774 F.

---

[2] Many courts find authority to strike class allegations in Fed. R. Civ. P. 12(f), which provides that "the court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See, e.g., Cty. of Dorchester, S.C. v. AT & T Corp., 407 F. Supp. 3d 561, 565 (D.S.C. 2019). The Fourth Circuit has implied that a court's authority to strike class allegations is grounded in Rule 23(d)(1)(D), not Rule 12(f). Scott v. Fam. Dollar Stores, Inc., 733 F.3d 105, 111 n.2 (4th Cir. 2013) (noting that an order striking class allegations "is the functional equivalent of denying a motion to certify the case as a class action"). From wherever the authority derives, it seems clear that the court possesses such authority, and courts universally apply the same standard to resolve motions to strike class allegations, meaning that the dispute is mostly academic and has no practical effect on the court's resolution of defendants' motion.

Supp. 1484, 1495 (D.S.C. 1991). As this court has explained, a motion to strike class allegations presents an "unusual" request because it requires a court to resolve the question of certification on the face of the complaint alone, without the benefit of any class discovery. Id.

> As a general matter, a ruling on class certification should normally be based on "more information than the complaint itself affords," Doctor v. Seaboard Coast Lines R.R. Co., 540 F.2d 699, 707 (4th Cir. 1976), and it should be made only "after 'a rigorous analysis' of the particular facts of the case[,]" In re A.H. Robins Co., 880 F.2d 709, 728 (4th Cir. [1989]), cert. denied sub nom. Anderson v. Aetna Casualty & Surety Co., 493 U.S. 959 [] (1989).

Id. at 1495–1496.

Because "it is essential that a plaintiff be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives," the Fourth Circuit has noted that "[i]t is seldom, if ever, possible to resolve class representation questions from the pleadings." Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1268 (4th Cir. 1981). Accordingly, a defendant requesting that the court strike class allegations shoulders a "heavy burden." Bryant, 774 F. Supp. at 1495; Mungo v. CUNA Mut. Ins. Soc., 2012 WL 3704924, at *4 (D.S.C. Aug. 24, 2012). "To prevail, the defendants have the burden of demonstrating from the face of [the] complaint that it will be impossible to certify the class[] alleged by the plaintiff[] regardless of the facts the plaintiff[] may be able to prove." Id. Put another way, striking class allegations prior to class discovery is inappropriate where "Rule 23 could be met[.]" Banks v. Wet Dog, Inc., 2014 WL 4271153, at *4 (D. Md. Aug. 28, 2014)).

## III. DISCUSSION

Defendants' motion asks the court to strike Dyer's class allegations under Fed. R. Civ. P. 23(d)(1)(D), arguing that "[b]ased on the allegations in the Complaint, even if true, Dyer's requested declarations cannot be made on a class-wide basis[.]" ECF No. 42-1 at 2. Class certification is governed by Rule 23, under which a proposed class must both satisfy the prerequisites for certification outlined in Rule 23(a) and constitute one of the permissible "types of class actions" under Rule 23(b). Defendants contend that it would be impossible for Dyer's proposed class to satisfy either Rule 23(a) or Rule 23(b), meaning that the court should strike the class allegations. The court discusses the plausibility of Dyer's proposed class under Rule 23(a) and then turns to Rule 23(b). Because certification is conceivable on both fronts, the court must deny the motion.

### A. Rule 23(a)

Rule 23(a) provides that one or more members of a class may sue as representative parties on behalf of all if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P 23(a). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) (internal quotation marks omitted). Were a motion for class certification before the court, Dyer would bear the burden of demonstrating the class's compliance with Rule 23(a). To reiterate, that is not the case on a motion to strike class allegations,

6

which preemptively asserts that the proposed class cannot be certified—ever—as a matter of law. Because the Rule 23(a) inquiry is before the court on their motion to strike class allegations, defendants bear the heavy burden to demonstrate that "it will be impossible" for Dyer's proposed class to satisfy Rule 23(a). Bryant, 774 F. Supp. at 1495. Defendants fall short on that burden.

The crux of the court's inquiry—as it was for the Supreme Court in Dukes—is commonality. 564 U.S. at 349. To review, plaintiffs have proposed the following class: "All persons billed by Defendants, or who paid a bill from Defendants, for air medical transport that Defendants carried out from a location in South Carolina." Compl. ¶ 38. On behalf of this class, Dyer seeks a declaration that, to put it simply, no contracts exist between defendants and the proposed class members for the emergency transportation services rendered. Defendants contend that the proposed class's claims are hopelessly dissimilar based on a few of theories. To begin, defendants argue that Dyer cannot be an adequate representative of the class for two reasons. First, "Dyer's class purports to include both (a) patients, like Dyer, who did not sign any written agreements prior to the transport, and (b) patients who, unlike Dyer, signed written agreements before or after transport." ECF No. 42-1 at 4. Dyer cannot be an adequate representative, defendants conclude, because he falls within group "a" and some unknown number of class members fall into group "b." The court disagrees.

The complaint gives no indication that the proposed class members' claims are dissimilar from Dyer's. In fact, it clearly alleges the opposite: "[Proposed class members] are patients, the parents of minors transported, and representatives of the estates of deceased patients, transported by Defendants in emergent situations where

7

there was no contractual relationship and no agreement with respect to the transport." Compl. ¶ 1. Defendants point to a sole allegation in the complaint, arguing that it renders the proposed class's claims dissimilar as a matter of law. That allegations states: "Defendants employ a standard form documents [sic] including Assignment of Benefits, and Authorization and Consent forms. These forms are executed irrespective of whether the transported patients are capable of signing." Compl. ¶ 22. It does not follow from this allegation, as defendants contend, that a significant number of class members signed enforceable contracts prior to their transport and Dyer did not. Instead, the allegation merely notes that defendants executed paperwork related to the transport of each individual. Therefore, this allegation certainly does not give the court grounds to find that a significant portion of the class signed valid and enforceable writings, rendering their claims impermissibly distinct from Dyer's.

Without the benefit of an evidentiary record, the court cannot discern how many, if any at all, of the proposed class members signed "Authorization and Consent" forms, nor can it assess the substance of such documents to determine their relevance to Dyer's claims. Discovery may reveal that a significant portion of the proposed class members in fact signed valid, enforceable, and legally consequential contracts prior to their transport, meaning that Dyer, who did not sign a contract, would be an inadequate representative. Of course, discovery may well reveal exactly the opposite—that no proposed class member signed a contract of any kind, making Dyer's claim unquestionably common and his representation clearly adequate. In this way, defendants' argument exposes precisely why a limited discovery period prior to certification is so commonly necessary. The court cannot properly assess the validity of the proposed class under Rule 23(a) without

it. Standing alone, the allegations of the complaint in no way render a showing of Dyer's adequacy as a representative an impossibility. Therefore, he is entitled to discovery on the question before the court considers certification.

Second, defendants argue that Dyer will not be able to show his adequacy as a class representative because "the proposed class also would include commercial and government payors," and "Dyer cannot fairly and adequately represent all class members because he is likely to have conflicts of interest with the putative class members who are commercial or government payors." ECF No. 42-1 at 4. Unfortunately, defendants' argument ends there, without giving the court any explanation as to how different categories of payors possess incompatible interests or how those supposedly incompatible interests render Dyer an inadequate representative. Dyer's claim is that no enforceable contracts exist between the proposed class members and Air Methods, meaning that the class members have no obligation to pay Air Methods. It seems common sense that any payor—regardless of category—would have an interest in no longer being obligated to pay. Defendants fail to demonstrate otherwise. Based on the allegations of the complaint, there is certainly a possibility that Dyer will satisfy Rule 23(a)'s adequacy requirement. Accordingly, neither of defendants' arguments give the court a reason to strike the class allegations.

Alternatively, defendants argue that the proposed class cannot pass muster under Rule 23(a) because its members' claims are not sufficiently common or typical. Commonality and typicality are closely related and often overlapping requirements. Under the former, the class must be united by a "common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve

an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350. Similarly, "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998) (quoting Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998)).

Defendants contend that the individualized circumstances of each patient's transport render their claims too dissimilar and atypical for class certification. Defendants illustrate these differences by listing a series of questions which, they posit, are material to the proposed class's claims and require individualized treatment. See ECF No. 42-1 at 5–6. For example, defendants note that resolving the class's claims will require the court to determine whether the patient was conscious prior to transport, whether the patient manifested assent to the transport through conduct and/or statements, whether the patient signed an Authorization and Consent form, and whether a parent or guardian signed an Authorization and Consent form on behalf of the patient. To be sure, if the proposed class's claims required the court to answer these questions with respect to each and every member, there would be no commonality. But once again, the complaint gives the court no grounds to conclude that commonality is lacking. It states:

> For individuals like Plaintiff, first responders or medical personnel determine whether a patient needs emergency helicopter transport, contact the Defendants and arrange for the emergency transportation. The need for emergency transportation is acute in every instance. The transported patient does not engage in any negotiation with Defendants, and the transportation is not a voluntary undertaking, but rather under the duress of life-threatening or other serious medical conditions requiring immediate treatment at a hospital. Given the dire circumstances, express or informed consent or negotiation of essential terms does not occur. <u>The patients are frequently unconscious, and in all instances incapable of giving meaningful express or informed consent, or otherwise voluntarily assenting to the transportation by the Defendants</u>.

Compl. ¶ 2 (emphasis added).  In other words, the complaint alleges that each proposed class member, whether because of unconsciousness or extreme injury, was incapable of manifesting voluntary assent to the transport.  Again, without the benefit of discovery, the court cannot determine the extent to which resolving the proposed class's claims will involve individualized inquiries.  Discovery may reveal that the proposed class members suffered from injuries of varying seriousness and that many who were conscious outwardly manifested assent to the transport.  However, discovery again could reveal the opposite—that the vast majority of proposed class members were unconscious or critically injured and without the capacity to consent.  The complaint, on which the court must rely for the purposes of this motion, indicates that the proposed class members were "in all instances incapable of giving meaningful . . . consent." Id.  Taking that allegation as true, as it must, the court has no problem concluding that the proposed class could possibly share a "common contention" "capable of classwide resolution[.]" Dukes, 564 U.S. at 350.

Defendants list a number of other potentially individualized circumstances underlying the claims of the proposed class but fail to explain how those circumstances are material to the class's claims.  For example, defendants note that the court will have to determine whether each proposed class member made any payments to Air Methods, who the various insurance carriers are, and whether any proposed class members negotiated his or her bill after receiving it.  But defendants do not explain how these questions have any bearing on the proposed declarations, and, as far as the court can tell, none do.  As discussed above, the critical issue the court must resolve is whether the proposed class members entered into contracts with defendants prior to their transport.

11

Defendants have failed to explain why any of the events that took place after the patients' transport would have a bearing on whether the patients and Air Methods entered into enforceable contracts, and the court can think of no satisfactory explanation.[3]

Therefore, taking the allegations of the complaint as true, there is a clear possibility, at the very least, that the proposed class will satisfy the commonality and typicality requirements of Rule 23(a). Certainly, the proposed class's ability to satisfy Rule 23(a) is far from impossible. Accordingly, the law does not permit the court to divest Dyer of his "essential" right to "be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives." Int'l Woodworkers, 659 F.2d at 1268. Thus, the court rejects defendants' argument.

**B. Rule 23(b)**

Defendants also contend that Dyer's proposed class is destined to fail under Rule 23(b). For a proposed class to be certified, it must fit comfortably within one of the permissible "types of class actions" under Rule 23(b), of which there are three. Because he has not moved to certify, Dyer has not indicated which type of class action he seeks to certify. Rule 23(b)(1) authorizes a class action where:

> prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

---

[3] To the extent that an Air Methods' patient's post-transport conduct is relevant to the issue of damages, the law is clear that "the potential need for some individualized damages determinations" does not destroy the Rule 23(a) requirements of commonality or typicality. DeGidio v. Crazy Horse Saloon & Rest., Inc., 2017 WL 5624310, at *12 (D.S.C. Jan. 26, 2017). "In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations." Gunnells v. Healthplan Servs., 348 F.3d 417, 423 (4th Cir. 2003).

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Rule 23(b)(2) authorizes class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Finally, Rule 23(b)(3) permits certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

      Again, defendants' argument reveals the prematurity of their request. As the court explained above, the complaint clearly alleges facts common to the proposed class that "predominate over any questions affecting only individual members." Id. Defendants, nevertheless, argue that individualized circumstances—like the patients' conduct prior to transport or their signing of consent forms—predominate over the proposed class's common claims. But again, without any evidence to consider, the court cannot probe beyond the complaint to assess the alleged individuality of the underlying circumstances. Class discovery serves that very purpose. After the parties undergo discovery, the court can ascertain the nature of the underlying circumstances and the extent to which they differ to determine whether the proposed class fits within one of Rule 23(b)'s authorized classes. Without more, the court cannot say the proposed class

13

will not fit within Rule 23(b) as a matter of law. Therefore, the court has no grounds to strike the class allegations.

In asserting their arguments, defendant rely heavily on Scarlett v. Air Methods Corp., 2020 WL 2306853, at *1 (D. Colo. May 8, 2020). The court has discussed Scarlett at length before in its resolution of the defendants' motion to dismiss. See ECF No. 34. By way of review, Scarlett is a consolidation of several individually filed class actions against Air Methods, initiated by Air Methods patients-cum-debtors and premised upon the same—or in some cases similar—legal theories upon which Dyer proceeds here. Air Methods recently filed a motion to strike class allegations in Scarlett, and the Colorado District Court there granted the motion in part. Specifically, the court denied the motion with respect to the plaintiffs' allegations that the parties did not form express contracts but granted the motion "with respect to whether or not an implied-in-fact contract was formed." Id. at *12. The court granted the Air Methods' motion with respect to the implied-in-fact contract issue for two reasons, the first of which does not apply here and the second of which the court finds unconvincing.

First, the district court noted that determining whether an implied-in-fact contract exists with respect to each class member will require the application of distinct bodies of law. The proposed class in Scarlett contains members from various different states, who experienced injuries in different states, and who were transported by Air Methods within different states. Because the determination of whether a contract exists calls for the application of state law, the court found that "merely determining which law will apply to a given class member illustrates the difficulty of class-wide resolution." Id. at * 11. In other words, the individualized circumstances within the proposed class in Scarlett would

require the court to apply often-competing laws of various states.  This, the court found, "preclude[d] effective class resolution." Id.  Those clear individualized circumstances—apparent from the face of the complaints in Scarlett—do not exist here.  Dyer brings his claims on behalf of a state-wide class, meaning that resolution of the implied-in-fact contract issue will require the exclusive use of South Carolina substantive law.

Second, the court in Scarlett found that the proposed claim members' claims were "factually distinct in important ways as well." Id.  The court explained that some facts "vary widely from member to member." Id.  For example, "Some patients were conscious when defendants arrived, some were not.  Some were with family members who spoke with defendants, some were not.  Some patients, family members, or patients' employees signed forms prior to transport, some did not." Id. (internal citations omitted). To be sure, defendants argue that precisely the same factual distinctions preclude class certification here.  Nevertheless, this court reaches a different conclusion than the court in Scarlett.  For one, the court does not share the Colorado District Court's confidence that "[a]ll these factual issues will require individualized resolution to determine whether contracts existed in each case between defendants and a particular class member." Id. As the court has expressed ad nauseum, it is without any evidence that might support such a conclusion.  Further, the court cannot say for sure that no legal theory would resolve the claims of the proposed class in one fell swoop, irrespective of minor discrepancies within their circumstances.  For example, the court may determine that the parties' failure to mention a price term prior to transportation belies any theory that a contract existed.  Rose Elec., Inc. v. Cooler Erectors of Atlanta, Inc., 794 S.E.2d 382, 385

15

(S.C. Ct. App. 2016) (In South Carolina, "[c]ertain terms, such as price, . . . are considered indispensable and must be set out with reasonable certainty.").

More fundamentally, Fourth Circuit law leaves no room for Scarlett's result. Based on the allegations of the complaint and without the benefit of discovery, the court cannot conclude that "it will be impossible to certify the class[] alleged by the plaintiff[] regardless of the facts the plaintiff[] may be able to prove." Bryant, 774 F. Supp. at 1495. Dyer, through discovery, could easily prove facts that demonstrate his adequacy as a representative and the class's satisfaction of Rules 23(a) and 23(b). Because Dyer "could" make theses showings, the court must deny the motion to strike class allegations. Int'l Woodworkers, 659 F.2d at 1268 ("[I]t is essential that a plaintiff be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives. It is seldom, if ever, possible to resolve class representation questions from the pleadings . . . .").

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 7, 2021**
**Charleston, South Carolina**